DONNELLY et al., Plaintiffs,

v.

TAYLOR et al., Defendants.

2002-Ohio-7461.]

Court of Common Pleas of Ohio,
Medina County.

No. 01–CIV–418.

Decided April 4, 2002.

26

David V. Gedrock, for plaintiffs.

Gregory Huber, for defendants.

JAMES L. KIMBLER, Judge.

### Procedural History of Case

{¶ 1} Mr. and Mrs. Patrick Donnelly filed a complaint against Mr. and Mrs. Loren Taylor alleging three causes of action. One was for breach of contract, one was for loss of enjoyment, and the other was for fraud and misrepresentation. All causes of action arose out of a purchase of a house in Lodi, Ohio, in the fall of 1999.

{¶ 2} The defendants filed a motion seeking summary judgment on all three causes of action. The plaintiffs filed a response to the motion. This entry sets forth the court's ruling on the defendants' motion.

### Findings of Fact

{¶ 3} Based on the pleadings and the evidentiary material filed by both parties in either support of or opposition to the motion, the court makes the following findings of fact:

{¶ 4} In the fall of 1999, Mr. and Mrs. Taylor listed their house for sale. The house was located in Lodi, Ohio, on Prospect Street. The listing agency was Padgett–Young in Lodi, Ohio. The house was purchased by Mr. and Mrs. Donnelly. The Donnellys never talked directly to the Taylors. All of their conversations went through either the real estate agent or the Taylors' son.

{¶ 5} The parties executed the purchase agreement on October 14, 1999. The agreement contained the following clause:

{¶ 6} "IN THE ABSENCE OF WRITTEN NOTICE OF ANY DEFICIENCY, FROM PURCHASER PRIOR TO CLOSING, PURCHASER UNDERSTANDS THAT THEY WILL TAKE THE PROPERTY IN AN 'AS IS' CONDITION."

{¶ 7} Following the execution of the purchase agreement, the house was inspected by a V.A. inspector, but the Donnellys decided not to have the house inspected by anyone other than the V.A. except for a termite inspection. The termite inspection was done and did not reveal any termite infestation.

{¶ 8} After all inspections, the Donnellys took possession of the house. Approximately two weeks after their possession began, they started to hear noises in the walls of the house. The noises were heard during the night but not during the day. They called out a pest-control service. The employee of the pest-control service told them they had either mice or squirrels in their home.

The pest-control service attempted to catch the suspected rodents by setting out traps but failed to catch any.

{¶ 9}  In January to early February, there was a warm spell.  It was during that warm spell that Mrs. Donnelly found a bat on the floor of a shower in the basement.  She called for her husband.  They removed the bat and notified the pest-control service.  The pest-control service informed them that the house had bats living in the walls.

{¶ 10}  Sometime after the discovery of the bat in the shower, their daughter came to them and told them there was a cricket in her room.  The Donnellys, who had not told her about the bats, went upstairs to her room.  They heard scratching in the walls, screeching from the walls, and the sound that their daughter described as sounding like crickets.

{¶ 11}  At that point, they sent their daughter to stay with her grandparents for the night.  They started "bat watches" to locate the bats.  They located several small holes near the roof line, but they did not think the holes were big enough to allow bats in and out.

{¶ 12}  They then had another pest-control expert come out and look for the bats.  The expert, Mr. Jameson, told them that bats can come in and out of a hole the size of a dime.  He located several holes that he thought were being used by the bats and started sealing them up.  His plan was to seal all the holes but one, thus forcing the bats to use that hole to enter and leave the roof area.

{¶ 13}  The remaining hole was screened in with a screening that allows the bats to leave, but not return, through the hole.  This happens because the screening is designed to let them crawl down the screen and then drop, which is how bats take off, but when they come back they run into the screens.

{¶ 14}  Mr. Jameson then sealed up all the holes but one.  He sealed that one after waiting several days.  The interval allowed the bats to leave the house. Unfortunately, some bats were still in the house, and they tried to escape by going down into the basement.  A live bat was found in the basement, and dead bats were found in the sump pump and the drains in the basement.

{¶ 15}  Although Mr. Jameson believed that dead bats were probably in the walls of the house, the Donnellys have not yet paid his company to remove the dead bats or remove the bat droppings that are in the attic and the walls of the house.

{¶ 16}  The Taylors filed affidavits claiming that they had no knowledge of the existence of the bats.  They filled out a disclosure form, which, although it asks about wood-boring insects, does not ask about bats.  There is a part, though, that asks about knowledge of any other material defects.  The Taylors did not list anything on the blanks provided in that part of the form.

{¶ 17}   The Donnellys found pieces of foil in the registers of the forced-air heating system, which they assume were placed there to make noise to keep the bats out of the vents.   They also found a boarded-up fireplace when they looked at the house prior to purchasing and, when they inquired, were told by the real estate agent that the Taylors never used the fireplace.   They also found boards nailed up in the basement.

Conclusions of Law

{¶ 18}   Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party.   *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 696 N.E.2d 201; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 19}   When a real estate buyer contractually agrees to accept real property "as is," the seller is relieved of any duty to disclose that the property is in a defective condition.   *Kaye v. Buehrle* (1983), 8 Ohio App.3d 381, 8 OBR 495, 457 N.E.2d 373.

{¶ 20}   An "as is" clause cannot be relied upon to bar a claim for fraudulent misrepresentation or fraudulent concealment.   Id.

{¶ 21}   If parties to a contract expressly or impliedly place the risk as to the existence of a fact on one party, the other party has no duty of disclosure.   3 Restatement of the Law, Torts 2d (1977) 119, Section 551, Comment *j*; *Kaye* at 382, 8 OBR 495, 457 N.E.2d 373.

{¶ 22}   If a real estate contract, through an "as is" clause, places the risk of nondisclosure on the purchaser, if there is a defect in the property that can be discovered by reasonable inspection, and if the purchaser is given the opportunity to make such an inspection, then the purchaser cannot maintain an action for fraudulent nondisclosure.   *Eiland v. Coldwell Banker Hunter Realty* (1997), 122 Ohio App.3d 446, 702 N.E.2d 116.

{¶ 23}   The elements of a cause of action for fraudulent misrepresentation or concealment are (1) a material false misrepresentation or a concealment, (2) knowingly made or concealed, (3) with intent of misleading another into relying on it, (4) reliance, with a right to rely, on the misrepresentation or concealment, and (5) injury resulting from the reliance.   *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709.

30

**30**

{¶ 24} Where a real estate purchase contract contains an "as is" clause, the doctrine of caveat emptor applies. The doctrine of caveat emptor bars recovery in an action by a purchaser for a structural defect where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser has the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor. *Layman v. Binns* (1988), 35 Ohio St.3d 176, 519 N.E.2d 642.

{¶ 25} In order for real estate purchasers to recover damages for nondisclosure of a defect where they signed a real estate purchase contract containing an "as is" clause, the purchasers have to show that the sellers either made a misrepresentation or took positive steps to conceal the defect.

{¶ 26} If real estate is purchased in an "as is" condition and there is a defect on the property that is not discoverable by reasonable inspection, but the purchaser cannot establish either a misrepresentation or positive action by the seller to conceal the defect, then the buyer cannot recover for damages caused by the existence of the defect.

## Holding

{¶ 27} The Donnellys have not shown that there is a material issue of fact regarding whether the Taylors actively misrepresented or actively concealed the presence of the bats in the house, and therefore summary judgment is granted to the Taylors. (This holding and the discussion below assume that the bats and their droppings are a defect in the condition of the premises.)

## Discussion

{¶ 28} This court finds that the law in Ohio regarding the effect of "as is" clauses in real estate contracts is to shift the risk of nondisclosure of defects in the real estate to the purchasers. In order to avoid this shifting of risk, purchasers have to show either that there was a positive misrepresentation by the seller or an active concealment of the defect and, in either case, that the defect was not discoverable by a reasonable inspection of the property or that an opportunity for such an inspection was not provided.

{¶ 29} If the defect is one that could not be discovered upon a reasonable inspection but the purchasers cannot establish a positive misrepresentation by the sellers or active concealment of the defect by the sellers, then the risk of the nondisclosure is still shifted to the purchasers.

{¶ 30} Put another way, as between a purchaser and a seller of real estate, absent either fraudulent misrepresentation or fraudulent concealment of a defective condition, the risk of nondisclosure is placed upon the purchasers where

there is an "as is" provision in a real estate contract, whether or not the defect is discoverable by a reasonable inspection.

{¶ 31} This court reaches this conclusion as to Ohio law by the following analysis:

{¶ 32} With respect to latent defects, Ohio follows the doctrine of caveat emptor if the defect is one that is discoverable by a reasonable inspection, there is an unimpeded opportunity to inspect the premises, and there is no fraud by the sellers. *Layman,* supra.

{¶ 33} If, however, the defect is not discoverable by reasonable inspection or opportunity to inspect is impeded by the sellers, then the doctrine does not apply, assuming that the contract does not contain an "as is" provision. The doctrine also does not apply if there is fraudulent misrepresentation or concealment by the sellers even though they allowed inspection or an opportunity to inspect.

{¶ 34} Where the contract contains an "as is" clause, the sellers have no duty to disclose latent defects, even though they are aware of them, but they may not actively misrepresent the condition of the property or actively conceal the defects. *Kaye,* supra. Put another way, fraud "trumps" an "as is" clause, and the purchasers may proceed with a lawsuit.

{¶ 35} The question then becomes what happens when you have a latent defect that is not discoverable by a reasonable inspection, no fraud on the part of the sellers, and the contract contains an "as is" clause?

{¶ 36} This court believes that in such a case the "as is" clause shifts the risk of the nondisclosure (perhaps a better term might be "nondiscovery") of the defect to the purchasers. In such a case, the existence of an "as is" clause puts the parties back in the position of caveat emptor.

{¶ 37} In either case, however, in order to maintain a cause of action for nondisclosure of a latent defect, the purchaser must show either that the defect was not discoverable upon a reasonable inspection and the contract does not contain an "as is" clause, or that the sellers actively misrepresented the condition of the premises or actively concealed the defect, regardless of whether the defect could be discovered by a reasonable inspection.

{¶ 38} In this case, the contract does contain an "as is" clause, and therefore absent fraudulent misrepresentation or fraudulent concealment, the purchasers, the Donnellys, bore the risk of any latent defects in the property, whether they were discoverable or not discoverable by a reasonable inspection.

{¶ 39} Therefore, the Donnellys cannot recover for breach of contract, absent fraud, for any latent defects in the property. In this case, that means that the

Taylors are entitled to a summary judgment on the Donnellys' cause of action for breach of contract.

{¶ 40} An "as is" provision in a real estate contract means that the purchasers have to establish that the sellers actively engaged in either a misrepresentation or a concealment of a latent defect. In this case, since the Donnellys never talked to the Taylors about the house until after the discovery of the bats, there is no evidence of any misrepresentation by the Taylors of the condition of the property.

{¶ 41} The Donnellys argue that since, according to their expert, the bats were in the house for approximately two to three years prior to October 1999, and since the bats made noises that were heard by the Donnellys after they purchased the house, the Taylors must have been aware of the existence of the bats. In support of this contention, the Donnellys point to the existence of the foil in the vents and the boards in the basement to further show that the Donnellys knew of the bat colony.

{¶ 42} Since the contract contained an "as is" clause, however, it is not enough to show that the Taylors knew of the existence of the bats. The Donnellys have to show that the Taylors took steps to actively conceal the bats from the Donnellys. The Donnellys fail to show how the foil in the registers and the boards in the basement stopped them from knowing of the bats' existence. They also fail to show any other steps taken by the Taylors to conceal the bats' existence.

{¶ 43} Therefore, the court finds that on the cause of action for fraud, the Taylors are entitled to a summary judgment.

{¶ 44} Since the court finds for the Taylors on the issues of fraud and breach of contract, the court also finds that, even assuming that a loss of enjoyment of the premises is a separate cause of action, the Taylors are entitled to a summary judgment on that issue also.

### Order

{¶ 45} The court hereby grants judgment to the defendants on all three causes of action set forth in the plaintiffs' complaint. Costs are taxed to the plaintiffs.

Judgment accordingly.